OPINION
{¶ 1} Appellant Tina Shanks appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, which granted permanent custody of her children, Kenisha and Shasta Rollison, to Appellee Licking County Department of Job and Family Services. The relevant facts leading to this appeal are as follows.
 {¶ 2} On November 1, 2002, Appellee LCDJFS filed a complaint alleging Kenisha and Shasta were dependent children pursuant to R.C. 2151.04.[1] The complaint alleged concerns about appellant-mother's failure to provide a safe and stable home environment with proper utilities. The complaint indicated that the children were found in a filthy state, lacking diapers, and without adequate food in the house. The complaint further alleged concerns about appellant's decision to permit temporary placement of the two children with an inappropriate care provider. On November 4, 2002, the trial court granted temporary custody to LCDJFS pursuant to emergency shelter care.
 {¶ 3} On January 27, 2003, the court found both children to be dependent. Temporary custody to LCDJFS was maintained. On September 30, 2003, LCDJFS filed its first motion for permanent custody. That motion was subsequently withdrawn, and via an agreed judgment entry filed December 4, 2003, temporary custody was continued with LCDJFS.
 {¶ 4} On March 26, 2004, LCDJFS filed its second motion for permanent custody. On October 26, 2004, a magistrate conducted an evidentiary hearing on the motion. Three days later, the magistrate issued a decision recommending permanent custody of both children to LCDJFS. Appellant thereafter filed an objection to the decision of the magistrate, pursuant to Juv.R.40(E)(3). The trial court denied the objections and affirmed the magistrate's decision on May 12, 2005.
 {¶ 5} On June 6, 2005, appellant filed a notice of appeal. She herein raises the following sole Assignment of Error:
 {¶ 6} "I. THE LOWER COURT'S GRANT OF PERMANENT CUSTODY OF THE MINOR CHILDREN, KENISHA ROLLISON AND SHASTA ROLLISON, TO THE LICKING COUNTY DEPARTMENT OF JOB FAMILY SERVICES, CHILDREN SERVICES DIVISION[,] VIOLATES APPELLANT SHANKS' [SIC] RIGHT TO DUE PROCESS UNDER THE LAW.
 I. {¶ 7} In her sole Assignment of Error, appellant contends the trial court improperly granted permanent custody of Kenisha and Shasta to LCDJFS. We disagree.
 R.C. 2151.414(B) Issues {¶ 8} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 9} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 10} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 11} "(b) The child is abandoned.
 {¶ 12} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 13} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 14} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C.2151.414(E)(1); In re Bender, Stark App. No. 2004CA00015,2004-Ohio-2268.
 {¶ 15} In the case sub judice, the case plan elements required appellant to (1) provide appropriate and safe housing for Kenisha and Shasta; (2) complete a parenting class program; (3) meet the children's basic and special needs; and (4) maintain steady employment.
 {¶ 16} The record reveals that appellant has not lacked a place to live; however, since the filing of the dependency complaint, she has had at least ten different residences, eight of them during the year 2004. Tr. at 135. In addition, she has stayed at hotels and the home of her paramour's mother during transitions between residences. Appellant also failed to verify her most recent two residences by providing lease copies to her social worker as requested. Appellant moved again only one week prior to the permanent custody trial, and further admitted to relying on HEAP assistance for some of her utilities.
 {¶ 17} In regard to her parenting classes, appellant technically completed the program. However, her ongoing social worker, Catherine Weber, was unconvinced that appellant had actually enhanced her parenting skills as a result thereof. See Tr. at 130. The program's coordinator, Darlene Compton, had concerns about appellant's amount of participation in class, completion of homework, low motivation level, and comprehension of class discussions. Appellant expressed to the coordinator early on that she did not believe she needed the classes. In addition, five individual sessions were scheduled to assist appellant with her comprehension of materials and to discuss the specific issue of using appropriate caregivers. Appellant attended only one of these sessions. Thus, although she "completed" the overall parenting program, she was encouraged in February 2004 to re-take it. She did not commence this until less than one month before the permanent custody trial; appellant in these later classes (just three of which were completed prior to trial) did much better in terms of assignments and participation, but she placed more of the emphasis for responsibility for her problems on her paramour, Kenneth Rice. Tr. at 90.
 {¶ 18} The record further indicates appellant was provided with unsupervised visits commencing in December 2003. However, in February 2004, an incident of domestic violence occurred between appellant and Mr. Rice. Appellee's Brief at 5-6. In addition, appellant testified that she had been approved for SSI benefits, but she had not received any checks nor provided written verification of benefits to her social worker. Appellant had not been employed since the spring of 2004. She had also lost her food stamp eligibility until December 2004 for missing two required meetings. Except for one payment, she had not paid toward her child support obligation. The social worker testified that appellant was "even in a worse place today than we were at the onset of this case because of the domestic violence and things that have come up since the time that the children were removed." Tr. at 155.
 {¶ 19} Finally, although not specifically listed in the case plan, appellant agreed to undergo a psychological evaluation. The psychologist, Dr. Richard Jackson, opined that her test results "were primarily in the mild range of mental retardation through the borderline range of intellectual functioning." Tr. at 61.[2] Dr. Jackson expressed that appellant's ability to properly parent her children in the foreseeable future was unlikely, noting the following:
 {¶ 20} "The functional level implies that learning is going to be at a slow rate, and it will require a lot of ongoing repetition, and, like I said, in terms of personality issues and treatment, there's a sort of mixed bag because, on the one hand, she would be — she would have the potential to respond positively to some aspects of counselling and that sort of thing because she does experience depression periodically, but I think she would struggle with consistency even in that area of strength because there is a tendency to blame others for problems." Tr. at 68.
 Best Interest Issues {¶ 21} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 22} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 23} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 24} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 25} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 26} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 27} In the case sub judice, the children had developed a bond with their foster parents, who were being considered as adoptive parents. Kenisha and Shasta's younger half-sister, Billie Jo Rice, has also been placed there. Kenisha and Shasta refer to their foster parents as "mom and dad." Tr. at 152. They nonetheless maintain a relationship with appellant as well, and they refer to her as "Mommy Tina." Id. On June 2, 2004, the guardian ad litem submitted a report recommending the children's best interest would be served by a grant of permanent custody, noting, inter alia, the ongoing concern of domestic violence regarding Kenneth Rice. Furthermore, as of the trial in October 2004, both children had been in the temporary custody of LCDJFS since January 27, 2003, not including the shelter care period. See R.C. 2151.414(D)(3), supra. Early in the case, LCDJFS attempted placement with the children's maternal grandfather; however, he declined to continue with the arrangement. Tr. at 112.[3] The social worker summarized that permanent custody was the only option to ensure stability for Kenisha and Shasta. Tr. at 155.
 Conclusion {¶ 28} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. In addition, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller
(1988), 37 Ohio St.3d 71, 75, 523 N.E.2d 846.
 {¶ 29} In the case sub judice, upon review of the record and the findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody to LCDJFS was made in the consideration of the children's best interests and did not constitute an error or an abuse of discretion.
 {¶ 30} Appellant's sole Assignment of Error is overruled.
 {¶ 31} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is hereby affirmed.
Wise, J., Hoffman, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is affirmed.
Costs to appellant.
[1] The father of Kenisha and Shasta, David Rollison, was listed in the complaint, but has had minimal participation in the case.
[2] Appellant presently urges that appellant should have been appointed an independent psychologist. See In re Egbert (1994),99 Ohio App.3d 492. However, no such request was made to the trial court.
[3] Appellant contends LCDJFS failed to adequately explore relative placements. Our review of the record suggests otherwise. See Tr. at 150-151.